UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Case No. 24-cr-128 (BAH) |
| v. | : | |
| | : | |
| **TIMOTHY TEDESCO,** | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Timothy Tedesco has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Tedesco to 14 days of incarceration on Count One and 36 months of probation on Count Two. The government also requests that this Court impose 60 hours of community service, and consistent with the plea agreement in this case, $500 in restitution.

I. **Introduction**

Defendant Timothy Tedesco, a 63-year-old retiree, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress' certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power

after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

The government's recommendation is supported by Tedesco's: (1) knowledge of the Electoral College certification process that was scheduled to occur at the U.S. Capitol on January 6; (2) decision to cross bike rack barricades and enter into restricted grounds; and (3) willingness to overlook numerous warning signs, including the rampant destruction of property taking place right next to him, and enter the U.S. Capitol building as part of a mob.

The Court must also consider that Tedesco's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Tedesco's crime support a sentence of 14 days of incarceration, 36 months of probation, 60 hours community service, and $500 restitution.

II.  **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, ECF 22 ¶¶ 1-7.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Tedesco's Role in the January 6, 2021 Attack on the Capitol*

Tedesco traveled from Corpus Christi, Texas to Washington, D.C. to participate in the "Stop the Steal" rally. After listening to the former President's speech, Tedesco walked towards the U.S. Capitol building while carrying two Trump and Texas state flags attached to a long PVC pole. *Id.* at ¶¶ 9-10. Arriving at the U.S. Capitol building, Tedesco walked to the East Front and stood behind a row of intact bike racks that clearly demarcated a restricted perimeter that protestors were not permitted to cross. *(See Image 1 below)*

From behind the perimeter, Tedesco joined the crowd in listening to an audio broadcasting of the Electoral College vote counting. *Id.* at ¶ 10. When the broadcaster announced the objection to the counting of the electoral votes from the State of Arizona, Tedesco cheered with the crowd, raising his arm in celebration. As the size of the mob swelled in numbers on the East Front, Tedesco clearly knew what was taking place inside the U.S. Capitol building – the certification of the Electoral College votes.  Up to that point, Tedesco had broken no laws and was exercising his First Amendment rights in a peaceful manner. But that didn't last.




*Image 1 (Left): After Tedesco arrived on the East Front, he stood behind a row of bike racks (see far left) that demarcated the line protestors were not permitted to cross. [Sent. Exh. 1 at 00:50]*
*Image 2 (Right): Tedesco cheered upon hearing a live audio broadcast of an objection to the electoral vote counting. [Sent. Exh. 1 at 00:51-00:53]*

Police officers, overwhelmed by the chaos and numbers of rioters, largely retreated from the bike rack perimeter on the East Front. Joining other rioters, and without authorization, Tedesco crossed over the bike racks and approached the Capitol building. *Id.* at ¶ 11. Standing immediately outside Capitol building doors on the southeast side, Tedesco spoke with multiple police officers who were on guard. As the rioters surrounding Tedesco became increasingly aggressive towards the vastly outnumbered police, gesticulating angrily and shouting "Just get out of the way!", the police officers walked away or retreated inside.



*Image 3: Tedesco spoke with police officers standing guard outside doors on the southeast side of the Capitol building. [Sent. Exh. 2 at 00:15- 01:00]*

Roughly 30 seconds after police retreated, a rioter dressed in black walked to the door, stood next to Tedesco, and began to smash the glass pane with a baton. As the rioter smashed the glass, Tedesco looked in the other direction. Shortly after, a rioter dressed in grey approached the same door and began to pound on the glass with an object. Tedesco, still standing just a couple of feet away, looked on.



*Image 4: Tedesco (yellow arrow) stood next to a rioter (red arrow) dressed in black who smashed the glass panes on the door. [Sent. Exh. 2 at 01:26]*



*Image 5: Tedesco (yellow arrow) looked on as another rioter dressed in grey (orange arrow) tried to smash the same glass panes. [Sent. Exh. 2 at 01:32]*

Moments later, Tedesco approached a window a few yards away and watched other rioters break that glass window. *See* Image 6. During these various encounters, Tedesco did not encourage rioters' destruction of property, but he also did nothing to raise alarm or concern. The open vandalism also did not discourage Tedesco from entering the building shortly afterwards.



*Image 6: Tedesco (yellow arrow) watched numerous rioters break a different window. [Sent. Exh. 2 at 2:06-02:12]*

At approximately 2:42 p.m., Tedesco entered the Capitol through the southeast doors, and headed in the direction of the House Chamber.



Image 7: Tedesco entered the Capitol through the southeast door at approximately 2:42 p.m.

Given the few CCTV cameras that picked up Tedesco's movement inside the Capitol building on January 6, the government surmises that Tedesco remained largely in the same location during the time he spent inside. Tedesco remained inside the U.S. Capitol building for roughly 12 minutes until he exited through the same southeast door at approximately 2:55 p.m. ECF 22 ¶ 12.



Image 8: Tedesco exiting the Capitol building.

After leaving the Capitol, Tedesco remained by the southeast doors, where he was filmed speaking with other rioters. In an opensource video, Tedesco could be heard speaking about the destruction of property that he witnessed and the shooting of a rioter inside the Capitol building.

7



*Image 9: Tedesco remained by the southeast door after exiting the Capitol building.*

*Tedesco's Post-Plea Interview*

Tedesco agreed to be interviewed as a condition of his plea agreement. During the interview, Tedesco stated that he traveled alone to Washington, D.C., driving 26 hours by car, and sleeping in truck stops and hotels along the way. While in route, Tedesco stopped in Georgia to participate in a different Trump rally. Tedesco stated his purpose for coming to D.C. was to support the former President and to encourage Congress to investigate votes that were "incorrectly" counted. Tedesco stated that he did not anticipate the rally would become violent, and that prior rallies he had attended had been largely peaceful, except, he claimed, when Antifa was present.

On January 6, Tedesco parked his car and met a stranger who was handling out pamphlets. Tedesco assisted in distributing the pamphlets and the two then walked together to the Capitol building, arriving around 11:00 a.m. Upon arrival, Tedesco could see police officers standing every five yards and bike racks set up as makeshift barricades. When police left the area, Tedesco crossed over the bike racks and approached the Capitol building. While there, Tedesco saw various individuals break windows. He claimed to have entered the Capitol building when a man wearing a suit held the door open. Tedesco was inside the Capitol building for roughly 12 minutes, and later left Capitol grounds upon hearing a curfew would go into effect.

During the interview, Tedesco appeared to express a view that Antifa or other bad actors had played a role in causing the events of January 6. However, Tedesco took responsibility for his decisions and expressed genuine remorse for entering the Capitol building.

*The Charges and Plea Agreement*

On March 13, 2024, the United States charged Tedesco by a two-count Information with violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). ECF 14. On April 19, 2024, pursuant to a plea agreement, Tedesco pleaded guilty to those two counts. By plea agreement, Tedesco agreed to pay $500 in restitution to the Architect of the Capitol. Because Tedesco has pled guilty to a petty offense, a term of supervised release is not authorized. *See* 18 U.S.C. § 3583(b)(3).

### III. Statutory Penalties

Tedesco now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States*

9

*v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Tedesco's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Tedesco, the absence of violent or destructive acts is not a mitigating factor. Had Tedesco engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Tedesco's case was his knowledge that when he entered the Capitol building, the certification of the Electoral College votes should have been taking place. Other significant aggravators include Tedesco's decision to cross over a bike rack barricade, and later, observe up close as multiple rioters broke glass panes on windows and doors. Despite this rampant destruction of property, Tedesco followed rioters inside the Capitol.

Tedesco is an older adult with significant life experience. He should have known—and he did, in fact, know that he should not follow rioters into the Capitol building. The nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Tedesco's History and Characteristics

Tedesco does not have any criminal history. Before retirement, Tedesco enjoyed stable employment and economic comfort. He provides significant care to his 29-year-old son, who is disabled.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The government credits Tedesco for quickly pleading guilty and accepting responsibility in this case. During his post-plea interview, Tedesco expressed genuine remorse for taking part in the January 6 riot. While Tedesco suggested other bad actors were present that day and helped to entrap rioters into breaking the law, Tedesco articulated a personal sense of shame in his actions– an emotion that the government rarely sees among January 6 defendants.

While the government commends Tedesco for taking responsibility, the government maintains that Tedesco should face some period of incarceration that will deter both him others from engaging in the next violent attack when a preferred candidate loses an election.

### A. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Tedesco based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Tedesco has pleaded guilty to Counts One and Two of the Information. These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Dragoo*, 23-cr-208 (BAH), the defendant pled guilty to violating 40 U.S.C. § 5104(e)(2)(G) and was sentenced by this Court to 14 days of intermittent confinement as a condition of 36 months of probation. Like Tedesco, Dragoo traveled to Washington, D.C. to protest Congress' certification of the Electoral College. Also like Tedesco, Dragoo observed temporary fencing that demarcated the restricted area, and decided to cross over that fencing. Both defendants observed broken windows, but still decided to enter the Capitol building. The Dragoos were inside the Capitol building for only about two minutes, while Tedesco was inside for roughly 11 minutes. Tedesco, more than Dragoo, has expressed sincere remorse for his actions on January 6.

In *United States v. Persick,* 21-cr-485 (BAH), the defendant pled guilty to violating 40 U.S.C. § 5104(e)(2)(G) and was sentenced by this Court to 90 days of home detention as a condition of 36 months of probation. Like Tedesco, Persick was willing to overlook broken windows and vandalism before following other rioters into the Capitol building. Whereas Tedesco headed in the direction of the House Chamber, Persick walked around hallways of clearly private office spaces. Persick was inside the Capitol building for 18 minutes, while Tedesco was inside for 11 minutes. Both defendants expressed remorse and embarrassment for taking part in the riot.

In *United States v. Jean Lavin*, 21-cr-596 (BAH), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) and was sentenced by this Court to ten days of confinement (served on weekends) as a condition of 36 months of probation. Lavin spent 32 minutes inside the Capitol building, significantly longer than Tedesco, and unlike Tedesco, minimized her conduct when first interviewed by FBI agents. Both Lavin and Tedesco witnessed the mayhem caused by the rioters—

13

Lavin witnessed violence against police on the West Front and in the Crypt, whereas Tedesco stood next to rioters as they broke glass panes on windows and doors. Both defendants pleaded guilty early, and the government does not have information that either defendant glorified the events of January 6 on social media.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense

14

of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Tedesco must pay $500 in restitution, which reflects in part the role Tedesco played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Tedesco's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *Id.*

## VI.   Fine

Tedesco's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide

---

against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, Tedesco has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Tedesco to 14 days of incarceration on Count One, 36 months of probation on Count Two, and 60 hours of community service. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Tedesco's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Melanie Krebs-Pilotti*
Melanie Krebs-Pilotti
Trial Attorney- Antitrust Division
Cal Bar. No. 241484
601 D St., NW
Washington, D.C. 20001
melanie.krebs-pilotti2@usdoj.gov
(202) 870-7457